## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Erick E. F.,

        Plaintiff,

v.

Martin J. O'Malley,
 Commissioner of Social Security
 Administration,

        Defendant.

No. 23-cv-0151 (DLM)

**ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Erick E. F. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits. This matter is before the Court on the parties' cross-filings seeking judgment on the administrative record. (Docs. 7 (Plaintiff's motion), 8 (Plaintiff's brief), 18 (Defendant's brief), 19 (Plaintiff's reply).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court denies Plaintiff's motion, grants the Commissioner's motion, and dismisses this matter with prejudice.

## BACKGROUND

On October 17, 2019, Plaintiff applied for Disability Insurance Benefits ("DIB"), alleging he had been disabled since May 4, 2019. (Tr.[1] at 229–30.) The Social Security Administration ("SSA") denied his claim initially (Tr. at 83–85), and upon reconsideration (Tr. at 99–101). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 102–03.) The ALJ held a hearing on December 8, 2021. (Tr. at 32–55.) Counsel represented Plaintiff at the hearing (Tr. at 32), and Plaintiff testified on his own behalf (Tr. at 39–50). A vocational expert also testified during the hearing (Tr. at 50–54).

On January 26, 2022, the SSA sent a notice of unfavorable decision to Plaintiff. (Tr. at 7–9 (notice), 10–23 (decision).) In her decision, the ALJ found that Plaintiff had a number of severe impairments, including degenerative disc disease, osteoarthritis of the knees, chronic myelogenous leukemia, and obesity. (Tr. at 13.) The ALJ found Plaintiff's remaining impairments to be non-severe, including COVID with residual otitis media, C difficile colitis, angioedema status post tracheostomy with infections related to tracheostomy wound, prostatitis, and pancreatic lesion. (*Id.*)

Yet despite Plaintiff's mental and physical impairments, the ALJ found that he is not disabled. (Tr. at 23.) In doing so, the ALJ determined that Plaintiff retains the residual

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on March 16, 2023. (Docs. 5–5-2.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited documents as if they were combined into one document, rather than the docket page number or exhibit number of each document.

functional capacity ("RFC")[2] to perform light work[3] with the following additional limitations: occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, and scaffolds; no balancing; and no work at unprotected heights or requiring operational control of moving, dangerous machinery. (Tr. at 16.) The ALJ credited the testimony of the vocational expert that Plaintiff could still perform jobs in the national economy given these limitations, including as a fast food worker (DOT No. 311.472-010), housekeeping cleaner (DOT No. 323.687-014), and a cashier (DOT No. 211.462-010). (Tr. at 22, 52.) Plaintiff appealed the ALJ's decision to the SSA's Appeals Council, but the Appeals Council denied his request for review on November 23, 2022 (Tr. at 1), making the ALJ's decision the final decision of the Commissioner.

Plaintiff then filed this lawsuit seeking judicial review of the SSA's decision. Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 404.1520(a)(4) for evaluating DIB claims.[4] Rather, he asserts that he cannot

---

[2] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[3] By regulation, "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Even if the weight lifted is very little, "a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1

perform greater than sedentary work given his limitations, and that the record shows he has no transferrable skills to perform jobs available nationally at the sedentary level—requiring a finding of disability. Based on this position, he makes two arguments. First, he claims that the subjective and objective record evidence fails to support an RFC determination that he can consistently sustain light work which includes standing and walking for six hours during an eight-hour workday. And second, he contends that because substantial evidence does not support the RFC determination here, the ALJ lacks evidentiary support for her conclusion that he can perform work as a fast food worker, housekeeping cleaner, or cashier.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the

---

to Subpart P of Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 404.1520(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v).

Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to decide whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ uses the wrong legal standard or incorrectly applies the law, those may be reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

**I.     Substantial evidence in the record supports the ALJ's RFC determination that Plaintiff could perform light work with some postural and environmental restrictions.**

Plaintiff's first argument is that substantial evidence in the record as a whole does not support the ALJ's formulation of his RFC finding that he can perform light work with some limitations. Specifically, Plaintiff claims that the SSA's own guidance is clear that an RFC should represent what a plaintiff can actually do for eight hours a day, five days a week, on a regular and continuous basis, and that both the subjective and objective evidence in the record demonstrate he cannot stand or walk for such a duration with any regularity. As to the subjective evidence, Plaintiff contends that the ALJ improperly discounted his repeated subjective reports of chronic pain in his back and joints and of the debilitating side-effects of his chemotherapy medication when formulating his RFC. As to the objective evidence, Plaintiff argues that the ALJ misrepresented the record on his knee

5

pain, cancer treatment, and their impact on his daily activities when crafting Plaintiff's RFC. Plaintiff also contends that the ALJ wrongly relied on the state agency consultants' internally inconsistent prior administrative medical findings that suggest standing limitations are necessary, but provide no recommended limitations.

The Commissioner disagrees, arguing that the ALJ properly evaluated the subjective and objective evidence in Plaintiff's case according to the required regulatory factors, and that the ALJ rightly credited the record evidence and expert findings suggesting that Plaintiff's limitations did not preclude him from full-time work at a light exertional level. As to the subjective evidence, the Commissioner claims that the ALJ acknowledged Plaintiff's reports of pain but found their limiting effects were less than Plaintiff represented based on other evidence in the record. As to the objective evidence, the Commissioner contends that the ALJ accurately represented the record on Plaintiff's knee pain and cancer treatment, but concluded that Plaintiff could still perform light work with some postural and environmental restrictions despite these conditions. The Commissioner also argues that the agency consultants' prior administrative medical findings were consistent internally and with the record, and that they support the ALJ's RFC finding.

A plaintiff's RFC is the measure of the most they can still do despite their limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all relevant evidence in the record to fashion a plaintiff's RFC, "including medical records, observations of treating physicians and others, and [the plaintiff's] own description of [their] limitations." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); *see also* 20 C.F.R. § 404.1545(e) (providing that the ALJ "will consider the limiting effects of all [a plaintiff's] impairment(s), even

6

those that are not severe, in determining [their] residual functional capacity"). "[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

The Court finds that substantial evidence in the record supports the ALJ's conclusion that Plaintiff could still perform light work with some postural and environmental limitations. The ALJ considered the subjective and objective impact of the residual impairments caused by Plaintiff's leukemia, including the side effects of Plaintiff's chemotherapy. (Tr. at 16, 17.) She acknowledged that Plaintiff's oncologist in July 2018 noted Plaintiff had a previous diagnosis of chronic pain but despite this had a full range of motion, intact strength and sensation, and that this was consistent with his previous examination in February 2018. (Tr. at 19.) She also observed that in August 2018 Plaintiff's oncologist advised that he could engage in normal daily activities. (Tr. at 17.) The ALJ recounted that by July 2019, Plaintiff reported to his oncologist that he had been doing well the past six months and was in full remission on his chemotherapy medication, although he had retired from his job because of knee and shoulder pain. (Tr. at 19.) During the examination, he denied muscle or joint pain and his physical examination was normal. (*Id.*) The ALJ documented that in May 2020, Plaintiff continued to have normal physical examination findings, with regular follow-up appointments every six months, and

treatment with chemotherapy medication that Plaintiff consistently reported "doing well on." (*Id.*)

The ALJ likewise considered the subjective and objective evidence of the impact of Plaintiff's back and knee pain on his functional abilities, as well as his reports of the side effects of his pain medication used to address his chronic joint and muscle pain—including daily naps that caused him to struggle with absenteeism at past work and made him reliant on roommates for his daily activities of living. (*Id.*) She reviewed the record of Plaintiff's medical treatment for back pain, noting he had consistently normal physical examination findings, received a lumbar nerve ablation procedure for his chronic back pain in May 2019, and reported his back pain was better under control through the use of pain medication and a muscle relaxant in July 2019. (Tr. at 18.) In medical visits during January, May, and August 2020, Plaintiff "had normal musculoskeletal and neurological findings, with normal motor function, symmetric reflexes, and normal range of motion," the ALJ observed. (*Id.*) As to his knee pain, the ALJ noted that Plaintiff reported knee pain first in September 2020 and presented with an antalgic gait—the only time such a symptom was noted in the record. (*Id.*) She noted that an x-ray supported a diagnosis of end-stage lateral osteoarthritis in some parts of his left knee, and he was treated with an injection—the only knee treatment documented in the record for the relevant period. (*Id.*) At the same time, the ALJ determined that because Plaintiff's left knee diagnosis involved end stage osteoarthritis in only one part—while the other areas of his knee were only mildly arthritic—his knee condition did not support a finding of disability or a capping of his capacity at only a sedentary exertional level. (*Id.*) The ALJ also noted that Plaintiff reported

8

using a cane, but she found no objective evidence of such an assistive device in the record. (*Id.*)

Finally, the ALJ considered the prior administrative medical findings and medical opinions of the consultants and treatment providers. (Tr. at 19–20.) She agreed with the findings of consultants Shayne Small, M.D., and Michael Otto, M.D., that Plaintiff could perform no more than light exertions, with some limitations for hazards and postural accommodations, because she found them consistent with Plaintiff's physical examinations and imaging findings. (Tr. at 19.) That said, she found a few additional restrictions warranted, limiting Plaintiff's balancing and climbing of ladders, ropes, or scaffolds because of his arthritic left knee. (*Id.*) She likewise considered the opinion of Derrick Williams, M.D., who gave a statement in August 2020 that Plaintiff had severe limitations in walking, sitting, and standing, needed 10 unscheduled breaks every workday because of pain, and could not sustain even the lowest stress work. (Tr. at 20.) The ALJ found this opinion unpersuasive because it was inconsistent with the record on Plaintiff's physical examination findings that were "generally benign." (*Id.*) She further noted that although Plaintiff claimed his daily activities were significantly limited, his oncologist had said he could engage in his normal activities and he admitted he could attend to his own care, drive, and manage his finances. (*Id.*)

Plaintiff bears the burden to prove his functional limitations. *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001). The Court's role is not to reweigh the evidence and to reach its own conclusion, but to ask whether substantial evidence supports the ALJ's conclusion. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022). As noted above,

"substantial evidence" is enough evidence that reasonable minds would accept the conclusion reached as supportable. *Biestek*, 139 S. Ct. at 1154. The question here is whether reasonable minds would accept, on this record, the ALJ's conclusion that Plaintiff retained the ability to stand and walk for the time provided in the RFC. In making this determination, the Court is mindful that the ALJ's decision should be reversed only if it falls outside "the available zone of choice," meaning that the ALJ's decision is not among the reasonable conclusions that can be drawn from the record evidence. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Because the ALJ properly considered all relevant factors and the medical evidence in the record in determining Plaintiff's RFC—including evidence on his ability to stand or walk despite his back, knee, and chronic pain—the Court finds the ALJ reached a conclusion supported by the evidence.

While Plaintiff contends that the ALJ failed to account for Plaintiff's subjective complaints of pain and its impact on his daily activities, the Court finds that the ALJ considered such evidence. The ALJ specifically articulated the required factors[5] under 20 C.F.R. § 404.1529(c) that she used to consider whether Plaintiff's symptoms were greater than could be explained by only the objective medical evidence, including: his daily

---

[5] These factors are often called the *Polaski* factors, as they are drawn from a class-action settlement in the matter of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), in which the Commissioner's predecessor agreed what evidence ALJs should consider in evaluating a claimant's subjective reports of pain. Those factors include (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of the plaintiff's pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the plaintiff's functional restrictions. *Id.* at 1320.

activities; the location, duration, frequency, and intensity of his pain; what precipitates or aggravates his symptoms; what medication he uses to alleviate pain; what other treatments besides medications he has received to relieve pain; what measures Plaintiff has used to try to relieve pain on his own apart from prescribed treatments; and any other factors that might help clarify how limited Plaintiff is by his pain-related symptoms. (Tr. at 17.) As discussed above concerning Plaintiff's complaints of leukemia treatment and back and knee pain, the ALJ noted that Plaintiff's daily activities were not entirely consistent with his complaints, nor did the medical evidence bear out his claims regarding the duration, frequency, or intensity of his pain. (Tr. at 16–20.) And although Plaintiff claims that the ALJ disregarded his pain medications and their side-effects, the ALJ expressly considered them when reaching her RFC determination. (Tr. at 14, 16–17, 19–20.)

Plaintiff further argues that the ALJ misrepresented the record by finding that his first report of knee pain was in 2020 and that Plaintiff was only treated once for his knee pain. The Court agrees that there are some reports of knee pain prior to 2020 in the record. (*See, e.g.*, Tr. at 689–90 (reporting joint pain in his knee to his oncologist in 2018), 698 (reporting knee and shoulder pain to his oncologist in 2019).) Yet while the Court agrees that the record contains reports of knee pain before 2020, the Court does not agree that the ALJ's failure to note these earlier reports shows that her conclusions about Plaintiff's knee pain are erroneous. "[A] deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). Additionally, a review of Plaintiff's 2020 medical visit with Dr. Williams confirmed that the years before 2020

11

were not full of overlooked medical visits for his knee pain. Instead, Plaintiff reported to Dr. Williams that he had experienced progressive knee pain over the past few years that worsened with standing and walking, but that he had had no recent x-rays of his knees, no history of vicosupplementation (a knee injection to relieve arthritis pain), no recent corticosteroid injections, and had been addressing his pain with pain medications. (Tr. at 919.) Thus, that 2020 appointment was, for purposes of the record before the ALJ, the first time Plaintiff had recently received medical treatment for his knee pain, and the ALJ considered that treatment consisting of an x-ray, a corticosteroid injection, a prescription for a brace, and recommended follow-up visits. (Tr. at 921.) Thus, the Court does not find that the ALJ's consideration of Plaintiff's knee pain resulted in a conclusion that is against the weight of the record's evidence.

Plaintiff also suggests that the ALJ created a straw man argument by asserting that Plaintiff had claimed to use a cane and then finding that Plaintiff's cane use was not supported by the record. According to Plaintiff, the ALJ erred here because neither counsel nor Plaintiff "alleged the need of a cane at the hearing or in his application of benefits." (Doc. 8 at 14 n.1.) Plaintiff may be technically correct, but not telling the whole story. Plaintiff checked a box for use of a cane on his functional report in January 2020. (Tr. at 274.) In June 2020, Plaintiff did not check the box for cane use on that same form. (Tr. at 291.) Based on this record, Dr. Small documented in March 2020 that Plaintiff "uses cane." (Tr. at 59.) When Dr. Otto reviewed Dr. Small's evaluation in June 2020, he also documented that Plaintiff "alleges using [c]ane" but that his "[a]nnual physical exam notes normal GAIT and no cane use," noting that Plaintiff's "allegations are partially consistent."

(Tr. at 75.) On Plaintiff's physical medical source statement completed by Dr. Williams in August 2020, Dr. Williams indicated Plaintiff does not use a cane. (Tr. at 859.) The Court thus finds that the ALJ's consideration of whether Plaintiff required the use of a cane is not a misrepresentation of the record, but an attempt to reconcile conflicting record evidence.

Plaintiff likewise disagrees that the ALJ properly considered the agency consultants' prior administrative medical findings, claiming the ALJ should have noted their internal inconsistencies and lack of consistency with the record. Yet, as noted above, the ALJ found their opinions supported by and consistent with the physical examinations in the record, although she opined that Plaintiff required even greater functional limitations than recommended to accommodate his knee pain. (Tr. at 19.) As to Plaintiff's ability to stand, the ALJ noted that the consultants limited Plaintiff's "time on [his] feet" to a light exertional level, which the ALJ found persuasive because it was supported by and consistent with other record evidence. (*Id.*) The Court finds no inconsistency—internally or with the rest of the record—in such a finding by the consultants or the ALJ.

Plaintiff also argues that the consultants made their findings in March (Dr. Small) and July (Dr. Otto) of 2020, and did not have the full record that the ALJ had in January 2022. (Tr. at 62, 74.) However, here, the ALJ appears to have considered the consultants' findings against the record and found that Plaintiff's RFC required greater limitations than those findings supported, suggesting that the ALJ accounted for differences between the full record in 2022 and the partial record in 2020. Therefore, the Court finds no error in the ALJ's explanation of the persuasive value he assigned to the agency consultants' findings.

Additionally, Plaintiff claims that other courts have found that severe osteoarthritis like Plaintiff's precludes them from light work. The problem with this argument is that the standard of review here is whether *this* ALJ on *this* record reached a conclusion based on substantial evidence, and the cases that Plaintiff cites are not factually identical to his own case. For example, in *Rosich v. Comm'r of Soc. Sec.*, No. 1:13-cv-1291 (ESC), 2014 WL 5343565, at *2 (W.D. Mich. Oct. 20, 2014), the plaintiff had "severe end-stage arthritic changes . . . in all 3 joint compartments," unlike plaintiff who had severe arthritis in only part of his knee. *Id.* Similarly, the plaintiff in *Neyhart v. Colvin*, No. 15-cv-5327 (RSL/JRC), 2015 WL 8467594, at *4 (W.D. Wash. Nov. 9, 2015), *R. and R. adopted*, 2015 WL 8328683 (W.D. Wash. Dec. 9, 2015), had not only "demonstrated severe degenerative osteoarthritis of the patellofemoral joint with mild degenerative osteoarthritis of the femoraltibial joint" in his right knee, but other conditions as well, such as "demonstrated severe degenerative osteoarthritis involving the first metatarsophalangeal joint" of his right foot, that—in combination—precluded the *Neyhart* plaintiff from light work. *Id.*

In sum, there is enough evidence in the record that "a reasonable mind would find it adequate to support the [ALJ's] conclusions." *Nash*, 907 F.3d at 1089. The ALJ's determination that Plaintiff could perform full-time work at a light exertional level with some additional postural and environmental restrictions is within "the available zone of choice" and, as such, will not be disturbed. *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

**II.     Substantial evidence supports the ALJ's conclusion that Plaintiff could perform light exertional level work as a fast food worker, housekeeping cleaner, and cashier.**

Plaintiff argues that if the Court finds his RFC is unsupported by substantial evidence, then it should also find that the jobs that the ALJ found he could still perform given that RFC are also unsupported by the record. Having concluded that the ALJ's RFC formulation is supported by substantial evidence in the record, the Court finds that the ALJ's conclusion that Plaintiff could perform work as a fast food worker, housekeeping cleaner, and cashier based on that RFC is also supported by the record.

### ORDER

Based on the above, as well as on the files, records, and proceedings in this case,

**IT IS ORDERED** that:

1. Plaintiff's Motion (Doc. 7) be **DENIED**; and

2. Defendant's Motion (Doc. 18) be **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 7, 2024                    *s/Douglas L. Micko*
                                        DOUGLAS L. MICKO
                                        United States Magistrate Judge